United States Court of Appeals,

Fifth Circuit.

No. 94-40821.

Jim WEAVER, Plaintiff-Appellee,

v.

AMOCO PRODUCTION COMPANY, Defendant-Appellant.

Oct. 10, 1995.

Appeal from the United States District Court for the Eastern District of Texas.

Before JOLLY and BENAVIDES, Circuit Judges, and FITZWATER,[*] District Judge.

BENAVIDES, Circuit Judge:

Defendant-Appellant Amoco Production Company ("Amoco") appeals the district court's final judgment after a jury verdict finding Amoco discriminated against Plaintiff-Appellee Jim Weaver ("Weaver") on the basis of age in willful violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.,* thereby entitling Weaver to liquidated damages in accordance with 29 U.S.C. § 626(b). Amoco also appeals the court's denial of its motion for new trial We affirm the judgment with respect to Weaver's claims, except for Weaver's claim for front pay, which we remand for further review by the district court. Additionally, attorneys' fees for services rendered on appeal are awarded to Weaver.

FACTS AND PROCEDURAL HISTORY

Weaver was hired by Amoco in 1968. He was fifty-six years old at the time of his termination on October 1, 1992. During the last sixteen years of his employment, Weaver held the position of Field Foreman at Amoco's Woodlawn Field office.

In 1992, Amoco decided to reorganize its Southeast Business Unit ("SBU"), determining that several positions would have to be eliminated as a result of the reorganization. In total, thirty positions were eliminated from the SBU, including eight supervisors. Three of the eight were reassigned to other positions within Amoco, while the remaining supervisors, including Weaver, were

[*]District Judge of the Northern District of Texas, sitting by designation.

terminated. Some of the employees terminated were older than Weaver, and some younger.

On January 29, 1993, Weaver filed suit in district court alleging that Amoco discriminated against him in violation of the ADEA and that Amoco's conduct was willful.[1] During trial before a jury, Weaver introduced a taped conversation he had with his supervisor, Phil Henigan ("Henigan"), in which Weaver was informed of his dismissal. Weaver also introduced a transcript of an enhanced version of the tape that contained the following exchange between Weaver and Henigan:

WEAVER: "Well, I know they are looking at the future."

HENIGAN: "And—and that's, you know, that's a big part of it, that"

WEAVER: "And a guy who is my age doesn't have much future left."

HENIGAN: "Yeah, that's a hell of a note to have to ... have that stuck in your face, but I guess in full assessment you're right. That's a—thing of it is it's ... Uh, it will be a cold—a cold reality you know when I say this. We think it's—we think it is time. If I were in your position and—we have got other people who are, who are going to be faced with the same thing."

WEAVER: "What kind of options are we talking about? And how long is it going to affect me and affect what we are looking at?"

HENIGAN: "You'll have to—you'll have to retire."

The jury returned a verdict in favor of Weaver. In answering the interrogatories submitted by the court, the jury found that Amoco discriminated against Weaver on the basis of his age. The jury awarded Weaver $105,000 in back pay and $280,000 in front pay. In addition, the jury found that Amoco's discrimination was willful.

On July 19, 1994, the district court entered an order finding that reinstatement was not feasible, awarding Weaver front pay. The Court also found, with regard to the issue of liquidated damages, that the jury's finding that Amoco willfully violated the ADEA was supported by the evidence. On August 1, 1994, the district court entered final judgment in favor of Weaver, awarding him $105,000 in back pay, $280,000 in front pay, $105,000 in liquidated damages, $52,862.50 in attorneys' fees, $3,569.90 in costs and postjudgment interest at the rate of 5.31%.

After considering each party's post-judgment motions, the district court denied Amoco's

---

[1]Weaver also alleged that Amoco intentionally inflicted emotional distress, but that claim was later abandoned.

motion for judgment, motion to alter or amend judgment, or in the alternative, motion for new trial. Amoco appeals the district court's final judgment and denial of Amoco's post-judgment motion.

## EVIDENCE OF AGE DISCRIMINATION

Amoco asserts that the only "evidence" of age discrimination presented by Weaver was the recorded conversation and transcript between Weaver and Henigan. Amoco argues that at no point in the conversation did Henigan indicate to Weaver that his age was relevant to his termination, but that Weaver "manipulated" the conversation by making a transcript that is not corroborated by the tape itself.[2] Amoco argues that Weaver has failed to make a *prima facie* case of discrimination, that his only offering of proof of discrimination is his subjective belief that he was the victim of age discrimination and that such proof is insufficient to establish that age discrimination occurred.

On appeal of a jury's verdict of age discrimination, we need not address the sufficiency of Weaver's *prima facie* case, but proceed to determine whether there was sufficient evidence upon which a jury could find that discrimination occurred. *Walther v. Lone Star Gas Co.,* 952 F.2d 119, 122-23 (5th Cir.1992). Our review of the record reveals sufficient evidence in support of the jury's finding that Amoco discriminated against Weaver on the basis of age. The transcript of the tape and Weaver's testimony with respect to the taped conversation between Weaver and Henigan reflects not mere subjective belief on Weaver's part, but specific evidence that would allow a reasonable jury to conclude that Amoco considered age in its determination to force Weaver to retire from the company.

## EVIDENCE OF WILLFUL DISCRIMINATION

Amoco contends that the district court abused its discretion in awarding liquidated damages because Weaver failed to produce any evidence that Amoco willfully violated the ADEA. Amoco argues that the record only demonstrates that Amoco made a good faith attempt to make a very difficult business decision with no regard to age of any affected employee. In addition, there is no evidence in the record tending to show an adversarial relationship between the parties. Finally, Amoco argues that not one witness testified that age "even remotely" entered into the decision to

---

[2]While Amoco asserts that it objected to the admission of the tape and transcript at trial, Amoco raises no argument on appeal with regard to the admissibility of the tape or the transcript.

terminate Weaver, let alone that Amoco egregiously violated Weaver's rights.

An award of liquidated damages is reviewed for an abuse of discretion. *Hendrick v. Hercules, Inc.,* 658 F.2d 1088, 1095-96 (5th Cir.1981). Our review of the record reveals evidence that Amoco acted in willful violation of the ADEA. The taped conversation between Weaver and Henigan not only supports the jury's finding of discrimination, but that Amoco knowingly decided to force retirement on Weaver based on his age and its effect on the future of the company.[3] Therefore, we find that the district court did not abuse its discretion in concluding that the jury's finding of a willful violation of the ADEA was supported by the evidence and that Amoco's contention that it acted in good faith was not.

## MOTION FOR NEW TRIAL

Amoco again contends that because the jury was presented with virtually no evidence that Amoco unlawfully discriminated against Weaver because of his age, or that Amoco willfully violated the ADEA, the jury's verdict "is obviously against the great weight of evidence in this case and Amoco is entitled to a new trial." Our review of the district court's order is for an abuse of discretion, giving greater deference to the court when the motion is denied leaving the jury's determinations undisturbed. *Dawson v. Wal-Mart Stores, Inc.,* 978 F.2d 205, 208 (5th Cir.1992). Having already found sufficient evidence in support of the jury's verdict, we also find that the district court did not abuse its discretion in denying Amoco's motion for new trial.

## FEASIBILITY OF REINSTATEMENT

Amoco contends that the evidence in the record establishes that Weaver's reinstatement was more than feasible in this case, and therefore, the district court abused its discretion in finding that reinstatement was not feasible and in awarding front pay. Amoco criticizes the court's failure to articulate the basis of its conclusion that reinstatement is not feasible, but cites to no authority that requires courts to articulate their findings with regard to determining the feasibility of reinstatement.

---

[3]*See e.g., Ray v. Iuka Special Mun. Separate School Dist.,* 51 F.3d 1246, 1251-52 (5th Cir.1995) (noting Supreme Court's rejection of requirement of proof of egregious conduct to prove willfulness in *Hazen Paper Co. v. Biggins,* --- U.S. ----, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993)).

Amoco argues that the only evidence presented by Weaver was that he did not desire reinstatement. Finally, Amoco argues that even if front pay is appropriate, the district court's award was clearly excessive because the court failed to articulate a rational basis and calculation for the award.[4]

This Circuit continues to recognize the decided preference to award reinstatement instead of front pay for a discriminatory discharge in violation of the ADEA. *Deloach v. Delchamps, Inc.,* 897 F.2d 815, 822 (5th Cir.1990). However, if reinstatement is not feasible, front pay is the appropriate award. *Id.* "The selection between reinstatement and front pay is discretionary with the trial court so long as the relief granted is consistent with the purposes of the ADEA." *Brunnemann v. Terra Intern., Inc.,* 975 F.2d 175, 180 (5th Cir.1992) (citing *Goldstein v. Manhattan Industries, Inc.,* 758 F.2d 1435, 1448-49 (11th Cir.), *cert. denied,* 474 U.S. 1005, 106 S.Ct. 625, 88 L.Ed.2d 457 (1985)). On appeal, we look to the record to determine why the district court considered reinstatement infeasible. *Walther,* 952 F.2d at 127.

In this case, we find that the record does not indicate why the district court considered reinstatement infeasible, nor does it contain a basis for the award of front pay. The court's only statement on the issue of reinstatement versus front pay was made in an order issued in response to Weaver's motion for additional damages, attorneys' fees and costs:

> At the conclusion of the trial in this case the Court was of the opinion that reinstatement was not feasible and submitted a jury question on the amount of front pay to be awarded in lieu of reinstatement. After carefully considering the parties post-trial briefs, the Court remains of the opinion that reinstatement is not feasible. In addition, the Court is of the opinion that the amount of front pay awarded by the jury was fair and appropriate....

The court did not articulate the basis for its conclusion that reinstatement was not feasible, nor did the court respond to Amoco's offer of reinstatement.[5] Furthermore, in *Walther,* we agreed "with the Seventh and First Circuits that a substantial liquidated damage award may indicate that an additional

---

[4]Amoco additionally argues that the offer of reinstatement given to Weaver after the verdict renders moot his award of front pay. This argument is without merit, and we note that the only authority relied on by Amoco does not support its argument.

[5]We note that Amoco's offer to reinstate Weaver was not made until after the district court initially found that reinstatement was not feasible and submitted the front pay issue to the jury. The district court was apparently first made aware of the offer through Amoco's motion for new trial.

award of front pay is inappropriate or excessive." *Id.* (additional citations omitted). The court in the instant case did not indicate whether it considered this factor in ratifying the jury's award of front pay in addition to a substantial amount of liquidated damages. In light of our holding in *Walther,* we find it appropriate to vacate the award of front pay in this case and remand to the district court for a more thorough review of this issue, and for articulated findings by the district court.

## ATTORNEY'S FEES ON APPEAL

Weaver seeks an award of $5,000 in attorneys' fees for services rendered on appeal. It is within our discretion to award attorneys' fees for the appeal of an ADEA case. *Hendrick v. Hercules, Inc.,* 658 F.2d 1088, 1097-98 (5th Cir.1981). We conclude that an award of $5,000 in attorneys' fees for services rendered on appeal is reasonable in light of the expertise and experience of Weaver's attorney, the time and labor involved and the results obtained. Accordingly, we award $5,000 in attorneys' fees for services rendered in connection with this appeal.

## CONCLUSION

The judgment entered upon the jury verdict is AFFIRMED, except the award of front pay is VACATED, and the claim for recovery of front pay is REMANDED for further proceedings. Attorneys' fees are awarded to Weaver in the amount of $5,000 for services rendered on appeal.