# United States Court of Appeals
# for the Fifth Circuit

———————

No. 23-50911

———————

Douglas Ramsey,

United States Court of Appeals
Fifth Circuit

**FILED**
March 3, 2025

Lyle W. Cayce
Clerk

*Plaintiff—Appellee*,

*versus*

Sheet Pile, L.L.C.,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:21-CV-331

_____

Before Elrod, *Chief Judge*, and Higginbotham and Southwick, *Circuit Judges*.

Leslie H. Southwick, *Circuit Judge*:

Douglas Ramsey sued his former employer for breach of his employment agreement and breach of a promissory note under which he had loaned the company money. His employer, Sheet Pile, counterclaimed for breach of the employment agreement and sought an injunction forcing Ramsey to return confidential information. Ramsey largely succeeded at trial. After trial, the district court awarded Ramsey prejudgment interest and refused to grant Sheet Pile's requested injunction. Sheet Pile appeals, challenging the jury instructions, sufficiency of the evidence, grant of

prejudgment interest, and denial of injunctive relief. We AFFIRM in part, VACATE in part, and REMAND for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

Douglas Ramsey was the Chief Financial Officer (CFO) of Sheet Pile, L.L.C., a company that manufactures the long interlocking, structural sections called sheet piles that are used, among other purposes, to make retaining walls. Sheet Pile promised to pay Ramsey a $120,000 salary, plus a $44,000 bonus once a particular order was fulfilled. Ramsey's employment agreement contained a two-year covenant not to compete in consideration of confidential information he would receive as Sheet Pile's CFO. It also contained provisions prohibiting disclosure of the terms of the employment agreement and requiring Ramsey to return Sheet Pile's property upon termination.

In November 2019, Sheet Pile needed a loan to meet an urgent payment deadline. Ramsey provided the funds, taking out a line of credit to loan Sheet Pile $100,000. The loan agreement between Ramsey and Sheet Pile provided for an initial interest charge of $10,000 and monthly interest of $411.67, calculated by reference to the interest rate on Ramsey's line of credit. Any remaining principal and interest would come due on December 21, 2020. If anything remained unpaid at that point, Sheet Pile would incur an additional $1,000 in interest per month in addition to the usual monthly interest charge.

Less than a month later, on December 18, 2019, Ramsey requested the $44,000 bonus under his contract. Sheet Pile did not respond and instead cut off Ramsey's email access. Sheet Pile claims it did this because it had discovered various improprieties Ramsey committed. The parties dispute whether Sheet Pile terminated Ramsey's employment on December 18, when it cut off his email access, or on December 30. Sheet Pile did not pay

Ramsey the $5,000 salary he would be due for the second half of December, relying on the alleged improprieties it claims were the reason for Ramsey's termination. Sheet Pile also did not repay any of the loan, this time citing alleged improprieties it discovered after Ramsey was terminated. For his part, Ramsey soon began to work with SteelWall U.S., one of Sheet Pile's competitors, although it appears SteelWall never formally employed him.

On March 1, 2021, Ramsey sued Sheet Pile in Texas state court to recover the balance of the loan, at that point close to $120,000. Sheet Pile removed the case to the United States District Court, Western District of Texas. Ramsey amended his complaint to add a claim for breach of the employment agreement, seeking to recover the final $5,000 of his salary and the $44,000 bonus Sheet Pile refused to pay him. Sheet Pile raised numerous counterclaims, but the only one relevant here alleges Ramsey breached his employment agreement. Sheet Pile also sought injunctive relief. It initially sought to bar Ramsey from working for SteelWall and from soliciting any of Sheet Pile's customers or vendors. Sheet Pile later narrowed its request to an injunction forcing Ramsey to return all confidential information he acquired while working for Sheet Pile.

The case went to trial in May 2023. The jury largely found in favor of Ramsey, awarding him the final $5,000 of his salary and $155,878.47 in damages on the loan. Two points are notable here. First, the jury's award on the loan perfectly matched the amount Ramsey testified to at trial, which included interest accruing up to the date of trial, over two years after Ramsey initially filed suit. Second, the jury found that Ramsey breached the employment agreement but refused to find him liable because it found that his duty to perform had been excused by Sheet Pile's prior material breach. Sheet Pile had generally objected to the prior material breach instruction because it "lack[ed] evidence" and was "in contravention of the controlling

law," but Sheet Pile did not specify how. Sheet Pile's objection was overruled, and the question was submitted to the jury.

After trial, Sheet Pile requested a permanent injunction requiring Ramsey to return all confidential information he acquired while working for Sheet Pile. In doing so, it highlighted the jury's finding that Ramsey breached his employment agreement, and it claimed that Ramsey improperly disclosed confidential information during the litigation. Sheet Pile also raised concerns regarding the propriety of prejudgment interest in light of the jury's damages award. The district court rejected Sheet Pile's argument about prejudgment interest because the jury had been instructed not to consider interest. The district court entered judgment and awarded Ramsey prejudgment interest without addressing Sheet Pile's request for a permanent injunction.

Sheet Pile filed a post-judgment motion reiterating its earlier arguments, requesting a permanent injunction and asking the district court to reduce the jury's damages award on the loan to the amount owed at the time suit was filed. Sheet Pile also raised a new argument, asserting that the prior material breach question was both factually unsupported and legally erroneous under Texas law, such that Sheet Pile was entitled to judgment as a matter of law on its claim against Ramsey for breach of the employment agreement. Alternatively, Sheet Pile moved for a new trial.

The district court again denied relief. It refused to reduce the jury's damages award because the jury awarded the exact amount of damages Ramsey identified in his testimony. Regarding the prior material breach question, the district court found that sufficient evidence supported the jury's finding, but it did not explain why the instruction was valid under Texas law. On injunctive relief, the district court found that Sheet Pile had not shown a likelihood of future disclosure, a prerequisite for injunctive

relief.  Finding no error, the district court denied Sheet Pile's motion for a new trial.  Sheet Pile timely appealed.

## DISCUSSION

Sheet Pile makes three arguments here.  First, it argues that the prior material breach instruction was factually unsupported and erroneous under Texas law.  Relatedly, Sheet Pile claims it is entitled to judgment as a matter of law on its contract claim because there was insufficient evidence to support the jury's prior material breach finding.  Second, Sheet Pile argues that the district court abused its discretion by not reducing the jury's damages award to the amount owed on the loan as of the date Ramsey filed suit, granting Ramsey an impermissible double recovery.  Third, Sheet Pile argues that the district court abused its discretion by not enjoining Ramsey to return all confidential information he acquired while working for Sheet Pile.

We will discuss the arguments in that order.

### I.     *Prior Material Breach*

Sheet Pile argues it was error to instruct the jury that Ramsey's duty to perform under the employment agreement could be discharged by Sheet Pile's prior material breach.  Sheet Pile challenges the instruction both on the grounds of evidentiary sufficiency and for legal error.  Sheet Pile argues that, as a matter of Texas law, a prior material breach does not discharge the later-breaching party's duty to perform if that party had elected to treat the contract as continuing.  Even if the instruction was proper, Sheet Pile argues there was insufficient evidence to sustain the jury's prior material breach finding.

We start with the two evidentiary sufficiency arguments.  Sheet Pile preserved these arguments by objecting to the jury instruction for lack of evidence and later moving for judgment as a matter of law under Rule 50(b).

*Bay Colony, Ltd. v. Trendmaker, Inc.*, 121 F.3d 998, 1003–04 (5th Cir. 1997). The jury instruction is reviewed for an abuse of discretion. *Jimenez v. Wood County*, 660 F.3d 841, 845 (5th Cir. 2011) (*en banc*). A district court abuses its discretion in issuing a jury instruction if there is insufficient evidence to support it. *United States v. Fuchs*, 467 F.3d 889, 901 (5th Cir. 2006). This court reviews a "denial of a motion for judgment as a matter of law *de novo*, applying the same standards as the district court." *Janvey v. Dillon Gage, Inc. of Dallas*, 856 F.3d 377, 384 (5th Cir. 2017). Judgment as a matter of law is appropriate only if "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1). "[T]he court must consider all of the evidence in the light most favorable to the nonmovant, drawing all factual inferences in favor of the non-moving party, and leaving credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts to the jury." *Price v. Marathon Cheese Corp.*, 119 F.3d 330, 333 (5th Cir. 1997).

Sheet Pile argues that it could not have materially breached the employment agreement before Ramsey's breach because its earliest potential breach was on January 10, 2020, when Sheet Pile did not pay Ramsey his final paycheck. In Sheet Pile's view, the evidence mandated a finding that Ramsey breached before that date, identifying alleged misconduct both before and after Ramsey's termination on December 18, 2019. Specifically, Sheet Pile charges that before Ramsey was terminated, he "took funds that did not belong to him, mismanaged Sheet Pile's inventory, mishandled Sheet Pile's books, and failed to appropriately title Sheet Pile's assets in a way that ensured they could not be stolen." After Ramsey was terminated, Sheet Pile charges that he "retained Sheet Pile's confidential documents in contravention of his employment agreement."

The evidence on these alleged breaches, however, is not one-sided. Ramsey testified at trial that he turned over Sheet Pile's property and

performed his job duties through December 30, 2019. It was reasonable for the jurors to accept this testimony and reject Sheet Pile's allegations of misconduct. Of course, the jury found Ramsey ultimately breached, but that finding is not logically inconsistent with a finding that Sheet Pile materially breached first. The jurors could have found that Sheet Pile materially breached the employment agreement on January 10, 2020, and that Ramsey breached the employment agreement later — such as when he formed his consulting company on January 17, 2020, or when he started working with SteelWall in February 2020, as either action may have violated Ramsey's covenant not to compete. Accordingly, the evidence was sufficient to support the jury instruction on prior material breach and the jury's finding on the same point.[1]

On the issue of Ramsey's contractual obligation to turn over Sheet Pile's confidential information upon termination, the relevant provision required him to return Sheet Pile's property. Ramsey admitted at trial that he retained documents containing confidential information after he was terminated, and he further admitted that documents of this kind were Sheet Pile's property. He clarified that the particular documents he retained were not Sheet Pile's property, but instead his personal records he retained based on the outstanding request for his bonus.

We need not decide whether this is a valid distinction. It is enough that the contract did not specify how long after termination Ramsey had to turn over Sheet Pile's property. The contract refers to returning property "at the time of termination," and we conclude jurors could reasonably find that Ramsey would have some time to gather the property together and

_____

[1] Because Sheet Pile is not entitled to judgment as a matter of law, we do not address the parties' arguments about the jury's zero-dollar damages award to Sheet Pile on its contract claim.

deliver it to Sheet Pile. They would have been correct in doing so, as Texas law provides that "when a contract does not specify a deadline for performance, the law implies that performance must be within a reasonable time." *In re Marriage of Penafiel*, 633 S.W.3d 36, 46 (Tex. App. — Houston [14th Dist.] 2021, pet. denied). Ramsey testified that he was notified of his termination over the phone on December 30, 2019, to be effective the next day. The jury could have found that Ramsey had not breached that obligation as of January 10, 2020 — a mere ten days after he was terminated and eleven days after he was notified of his termination.

Sheet Pile also challenges the jury instruction on prior material breach as a matter of Texas law. Under Texas law, a prior material breach does not discharge the later-breaching party's duty to perform if that party elects to treat the contract as continuing. *Long Trusts v. Griffin*, 222 S.W.3d 412, 415 (Tex. 2006). Sheet Pile reasons that Ramsey elected to treat the contract as continuing because he believed he was still subject to nondisclosure obligations (even though Sheet Pile claims he violated those obligations) and because he sued for damages under the same contract.[2] Because Sheet Pile did not object to the jury instruction on this basis below, review is for plain error. *Jimenez*, 660 F.3d at 845 (citing Fed. R. Civ. P. 51(d)(2)).

Plain error review has four steps: the appellant must establish (1) error (2) that is "clear or obvious" and (3) "affected [its] substantial

---

[2] Sheet Pile's primary argument is that there is a bright-line legal rule that suing under a contract prohibits a plaintiff from relying on a defendant's prior material breach to excuse his own breach. To the extent that is true, the issue would be a pure question of law, and nothing would need to be submitted to the jury to determine that Ramsey treated the contract as continuing. Sheet Pile's secondary argument about Ramsey's nondisclosure obligations raises more troubling questions about whether a judge or jury decides the issue, but because Sheet Pile fails to show that any error was clear or obvious, we need not resolve who decides.

rights." *Puckett v. United States*, 556 U.S. 129, 135 (2009). If the first three steps are satisfied, then (4) the court of appeals may exercise its discretion to correct the error, which it should only do if the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id.* (alteration in original) (quoting *United States v. Olano*, 507 U.S. 725, 736 (1993)).

Assuming that Sheet Pile has shown error, it has not shown that the error was clear or obvious. Sheet Pile cites a single Texas court of appeals decision for the proposition that suing for damages under a contract means the plaintiff treats the contract as continuing. *Chilton Ins. Co. v. Pate & Pate Enters., Inc.*, 930 S.W.2d 877, 888 (Tex. App. — San Antonio 1996, writ denied). Another Texas court of appeals does not interpret *Chilton* as does Sheet Pile, instead finding this meaning: "[a]lthough the non-breaching party must elect between continuing or ceasing performance, the election does not affect whether the non-breaching party can sue for a former or future breach." *Gupta v. E. Idaho Tumor Inst., Inc.*, 140 S.W.3d 747, 757 n.7 (Tex. App. — Houston [14th Dist.] 2004, pet. denied) (citing *Chilton*, 930 S.W.2d at 887–88)). The implication is that the non-breaching party does not necessarily elect to treat the contract as continuing by suing for an earlier breach.

We also find authority from the Supreme Court of Texas that suing for "the benefit of the bargain," to get the good of the contract without the bad, constitutes an election to treat the contract as continuing. *Long Trusts*, 222 S.W.3d at 415–16. That authority does not clearly establish the principle Sheet Pile requires, however. *Long Trusts* dealt with a situation where the later-breaching party sought to enforce obligations that arose after the prior material breach. *Id.* Here, Ramsey sought to receive a paycheck, the withholding of which *was* the prior material breach. In summary, the district

court did not clearly or obviously err in failing to apply a bright-line rule that suing under a contract amounts to electing to treat it as continuing.

Sheet Pile also argues that Ramsey's abiding by a contract by inaction — here, by not disclosing confidential information — constitutes a clear election to treat the contract as continuing. No authority for such a proposition is cited. Sheet Pile again fails to show clear or obvious error. The district court thus did not plainly err on this point. We find no reversible error on the issue of prior material breach.[3]

## II.    *Prejudgment Interest*

Next, Sheet Pile argues that the district court abused its discretion by not reducing the jury's damages award on the loan to the amount owed as of the date Ramsey filed suit. Sheet Pile argues that the jury awarded damages based on the amount owed as of the date of the verdict. According to Sheet Pile, the district court's additional award of prejudgment interest gave Ramsey an impermissible double recovery. We review the refusal to offer a remittitur for an abuse of discretion. *Brunneman v. Terra Int'l, Inc.*, 975 F.2d 175, 177 (5th Cir. 1992).

It is apparent that the jury awarded damages on the loan based on the amount owed as of the date of the verdict, not as of the date Ramsey filed suit. The jury awarded Ramsey $155,878.47 in damages on the loan, exactly matching the amount Ramsey identified in his trial testimony, a number he explained accounted for all the interest that had accrued as of the date he testified. That number also matches the amount that would be owed on the

---

[3] We reject as inadequately briefed Sheet Pile's conclusory assertions that it did not owe Ramsey the final two weeks of his salary and that failing to pay Ramsey that salary was not a material breach. "A party who inadequately briefs an issue is considered to have abandoned the claim." *Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994).

loan as of that date by simply extrapolating out the contractual interest provisions.   True, as the district court stated, the jury was specifically instructed not to consider interest in determining damages.   Even so, the record makes clear that the jury *did* consider interest in determining damages, notwithstanding the jury instruction.[4]  *Cf. Budge v. Post*, 643 F.2d 372, 376 (5th Cir. Unit A Apr. 1981) (ordering a remittitur when a damages award "patently reflected" that the jury did not follow a jury instruction).  Although jurors are presumed to follow jury instructions, *CTX Transp., Inc. v. Hensley*, 556 U.S. 838, 841 (2009), that presumption does not prevent the court from observing and acting on an obvious failure of jurors to have done so.   The presumption is overcome in this case.

The only question, then, is what date should have been used in calculating damages.   Sheet Pile argues that Texas law bars juries from awarding contractual interest accruing after the date the suit is filed.   In diversity cases like this one, prejudgment interest is governed by state law. *Boston Old Colony Ins. Co. v. Tiner Assocs. Inc.*, 288 F.3d 222, 234 (5th Cir. 2022).   Texas statutes provide clear rules for postjudgment interest.  Tex. Fin. Code §§ 304.001–304.007.   The rates provided in those statutes control the prejudgment interest rates, whether as a matter of statute or as a matter of equity.  § 304.103; *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 530–33 (Tex. 1998).   In cases where a contract provides an interest rate, the contractual interest rate is used up to a ceiling of eighteen

---

[4] Ramsey belatedly attempts to characterize the bulk of the contractual interest as "late fees."   This is a distinction without a difference.   Both the loan agreement and Ramsey's complaint cast the supposed "late fees" as "interest."   Those fees serve the same purpose as the rest of the contractual interest — both amounts compensate Ramsey for the lost use of his money, which is the same purpose served by prejudgment interest. That the "late fees" effectively caused the interest rate to increase after the loan was past due does not change this fact.

percent.  § 304.002.  In cases where there is no contractual interest rate, the applicable interest rate is the prime rate, with a floor of five percent and a ceiling of fifteen percent.  § 304.003.  Prejudgment interest runs from the date the suit is filed to the day before judgment is rendered.  § 304.104.[5] Additionally, Texas has a policy against double recovery.  *Waite Hill Servs., Inc. v. World Class Metal Works, Inc.*, 959 S.W.2d 182, 184 (Tex. 1998).  In keeping with that policy, the purpose of prejudgment interest is "to put a plaintiff back into her pre-injury position," not to give the plaintiff an unfair windfall.  *Robertson County v. Wymola*, 17 S.W.3d 334, 344 (Tex. App. — Austin 2000, no pet.).

Considering these principles, Texas law provides that the prejudgment interest applicable in a case like this one *is* the contractual interest that accrues between the date of filing and the date judgment was entered.  At least two federal district courts have also taken that position.[6] *Nautilus, Inc. v. ICON Health & Fitness, Inc.*, No. SA-16-CV-00080, 2018 WL 2107729, at *2 (W.D. Tex. May 7, 2018); *Delphis, L.P. v. NFLP Holdings, Ltd.*, No. 3:10-CV-01583, 2011 WL 13229091, at *6 (N.D. Tex. May 18, 2011).  The jury may not award that portion of interest as damages — prejudgment interest is the domain of the judge, not the jury.  Because the jury impermissibly crossed that line, the district court abused its discretion by not offering Ramsey a remittitur limiting the damages to the amount owed on the loan as of the date the suit was filed.  Sheet Pile and Ramsey have

---

[5] Although Section 304.104 does not apply to contract claims by the terms of the subchapter, *see* § 304.101, the Supreme Court of Texas has made clear that its timing rules apply to equitable prejudgment interest.  *Johnson & Higgins*, 962 S.W.2d at 531.

[6] Although this holding calls into question the prejudgment interest rate the district court applied, no party challenges it, so we do not disturb that part of the judgment.

inconsistently calculated that amount throughout the litigation, so we leave the precise number for the district court to determine on remand.[7]

### III.    *Injunctive Relief*

Finally, Sheet Pile argues that the district court abused its discretion by not enjoining Ramsey to return all confidential information he acquired while working for Sheet Pile.  Sheet Pile argues it was entitled to this injunction because (1) the jury found Ramsey had breached his employment agreement; (2) Ramsey violated a protective order and his employment agreement by disclosing confidential information to a supposed paralegal during the district court proceedings; and (3) Ramsey admitted that he retained confidential information after his termination.

We review the denial of a permanent injunction for an abuse of discretion.  *Schlotzsky's Ltd. v. Sterling Purchasing & Nat'l Distrib. Co.*, 520 F.3d 393, 402 (5th Cir. 2008).  "[A] district court abuses its discretion if it (1) relies on clearly erroneous factual findings when deciding to grant or deny the permanent injunction[,] (2) relies on erroneous conclusions of law when deciding to grant or deny the permanent injunction, or (3) misapplies the factual or legal conclusions when fashioning its injunctive relief."  *Peaches Ent. Corp. v. Ent. Repertoire Assocs., Inc.*, 62 F.3d 690, 693 (5th Cir. 1995).  "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948).

---

[7] At times, Sheet Pile has implied we could directly reduce the jury's damages award without a remittitur because the amount owed on the loan can be determined as a matter of law.  The usual and better course is to offer a remittitur, so we instruct the district court to do so here. 11 Wright & Miller, Federal Practice and Procedure § 2815.

No. 23-50911

The district court refused to grant Sheet Pile's requested injunction, finding that Sheet Pile had not shown that Ramsey was likely to disclose confidential information in the future. "The critical question in issuing [an] injunction and also the ultimate test on review is whether [the] defendant's past conduct indicates that there is a reasonable likelihood of further violations in the future." *SEC v. Blatt*, 583 F.2d 1325, 1334 (5th Cir. 1978). When denying an injunction, the district court stated that the jury "d[id] not determine *how* Ramsey breached the [employment] agreement, nor d[id] it establish that future violations are likely." Additionally, Sheet Pile's proposed inference that the supposed paralegal disclosed confidential information to one of Sheet Pile's competitors did not require the district court to find Ramsey was likely to disclose confidential information in the future.

Upon review of the record, we conclude the district court did not abuse its discretion in denying an injunction based on the court's factual findings. Notably, though, the district court did not address Sheet Pile's third argument, that Ramsey admitted to retaining confidential information after his termination. There is a reason for this: Sheet Pile did not raise this argument before the district court.[8] We do not fault the district court for not addressing arguments not before it, and thus the district court did not abuse its discretion in denying Sheet Pile's requested injunction.

Even so, because we are remanding this case, and because Ramsey may possess some of Sheet Pile's property in violation of his employment

---

[8] Sheet Pile alluded to the fact that Ramsey continued to retain confidential information, but its briefing in support of a permanent injunction focused on Ramsey's disclosure of that information, not on the fact that he merely retained it. Even on appeal, Sheet Pile never clearly separates the two ideas. The district court reasonably construed Sheet Pile's arguments as going only to the potential injury of disclosure and not to a possible ongoing contractual injury of Ramsey's mere retention of confidential information.

agreement, we leave open for the district court to consider Sheet Pile's new argument as it relates to any injunctive relief that might be appropriate. Ramsey's contract requires him to return all of Sheet Pile's property upon his termination. He admitted at trial that he still has documents containing confidential information. On remand, Ramsey may renew his trial argument that the documents are his personal records, and we express no opinion on that question. The district court should consider whether Ramsey should be required to return any documents he has containing confidential information.

*Conclusion*

In summary, the district court did not err in its jury instructions regarding prior material breach. Nor did the district court err in sustaining the jury's finding that Sheet Pile's prior material breach excused Ramsey's later breach. The district court did err in refusing to offer Ramsey a remittitur. On remand, the district court is to offer Ramsey a remittitur based on the amount owed on the loan as of the date Ramsey filed suit. We express no opinion on what that amount should be because the parties have made inconsistent representations on that point throughout the litigation. Additionally, the district court is to consider an injunction requiring Ramsey to return any documents he has containing confidential information.

AFFIRMED in part, VACATED in part, and REMANDED for further proceedings.